FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2016 OCT 20  PM 1: 55

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

**CHARLES CRABLE,**                                      **CASE NO.:**

6:16 cv-1825-or-22TBS

     **Plaintiff,**

**v.**

**PREMIER BATHS, INC., d/b/a**
**PREMIER CARE IN BATHING,**
**and BILL KELLY.**

     **Defendants.**

_____/

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Charles Crable, by and through his undersigned counsel and sues Defendants PREMIER BATHS, INC., d/b/a PREMIER CARE IN BATHING (hereinafter "Premier") and BILL KELLY (hereinafter "Kelly") and states as follows:

### JURISDICTION

1.      This is a civil action seeking damages. Jurisdiction is conferred on this Court by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* and 28 U.S.C. §§ 1331, 1337, and 1350. Venue is proper in the Middle District of Florida as stipulated in the contract.

### PARTIES

2.      At all relevant times, Plaintiff Charles Crable, was and is a resident of Cortland County in the State of New York.

3.      At all relevant times, Defendant Premier Care in Bathing ("Premier") is a Florida corporation employing more than 25 people. Premier was, at all relevant

times, licensed to do business, was and is doing business, by virtue of the laws of the State of New York, and in Cortland, County and all counties in the State of New York.

4.     At all relevant times, Defendant Bill Kelly was and is a resident of the State of Rhode Island.

### FACTUAL ALLEGATIONS

5.     Plaintiff commenced employment as a sales representative with Defendant Premier on July 31, 2014. At all times during his employment with Defendant Premier, Plaintiff competently and diligently performed his duties. Plaintiff was regularly complimented verbally and in writing from Defendant Bill Kelly and Premier Vice President Gary Reda for a job well done. Plaintiff won bonuses and awards from Premier beginning the first month of employment. Plaintiff was terminated without notice in violation of the Defendant's own contract on October 17, 2014.

6.     The Defendants required that Plaintiff work out of his own established home office to work with Premier selling walk-in bathtubs to the aged and disabled. There were equipment requirements, such as a computer with Internet connection, hardwired telephone, long-distance telephone, fax machines, printer, and an I-Phone to receive messages and orders while in the field selling the walk-in bathtubs.

7.     All appointments were made by Premier and emailed or faxed to Plaintiff's home office the night before the appointment. Any changes or new instructions were communicated from the company to Plaintiff. Plaintiff was inexplicably ordered by the Defendants to return to the same appointment often three times or more. These orders were usually given by Defendant Kelly, but occasionally

others from Premier would call Plaintiff to tell him where to drive next if a change were necessary, including a return. Plaintiff was required to use his own vehicle to travel from appointment to appointment.

8.   Only Premier would contact the homeowner. Plaintiff was forbidden from having the client's telephone number, thereby controlling the activities of the Plaintiff and violating its own contract.

9.   Contrary to the promises made by Defendant Kelly, Plaintiff was required to drive very far distances outside the described boundaries as described by Defendant Kelly. Plaintiff was promised a maximum one-way boundary of 80 miles from Plaintiff's home office. The appointments all made by Premier and communicated to Plaintiff primarily by Defendant Kelly were to be scheduled in and around central New York State.

10.   Unfortunately, from Plaintiff's home office, it was not unusual to be told to drive 120 miles or more. On one particular day, Plaintiff was required to drive a 400-mile round trip. Both appointments were to old mobile homes in the state of Pennsylvania.

11.   During training, which was held in Rhode Island for three days, Plaintiff was informed by another sales rep named Bobby that Defendant Kelly writes his own business. Moreover, Bobby stated that Kelly writes business in New York State. Manager Bill Kelly only told Plaintiff he would travel to Texas for weeks at a time for recruiting and training. Plaintiff began to ask questions.

12.   Plaintiff would ask occasionally why there were no appointments in or near the Plaintiffs home office area as promised. This after the Plaintiff had driven to

each and every appointment required by Premier, most 100 miles or more and, nonetheless, having a good measure of success. No answer was ever provided.

13.   The Plaintiff sold over $60,000 worth of business during his first month earning more than $6,000 in commissions. The records will show the actual addresses and locations the Plaintiff had to drive. In spite of his success, the Plaintiff noticed a pattern with no appointments, save one or two in his territory including Binghamton, Ithaca, and Cortland, out of more than a total of 100 as far away as 200 miles.

14.   Possessing a good background well educated, and formerly running his own business, the Plaintiff understood the effect of charges made for false advertising. The client wanted the bath unit or perhaps just the information. In September 2014, suddenly most of the appointments made by Premier and funneled through Manager Bill Kelly were of very low quality.  Many were in dilapidated mobile home parks or so far out with very meager incomes and home values. But the company had to respond to the leads or risk being accused of false advertising. Mr.Crable never refused or complained but only asked why none were in other nearby areas like Ithaca, yet still made the drives.

15.   A scheduler named Daniel at Premier informed the Plaintiff that Manager Bill Kelly determines whom gets what leads. It was clear Mr. Kelly was reserving better leads for himself since he continually does business in New York State.

16.   In spite of the Plaintiff's immediate and continued success with Premier, he began to realize why he was hired in the first place.

17.   It became clear that the Plaintiff was simply hired to run the leads that Manager Bill Kelly did not want to take, i.e., the old mobile homes, rough neighborhoods, far

outlying areas and other low quality leads with little or no chance for a sale. The Plaintiff was hired to protect Premier and address all the bad leads, contrary to the promise of pre-qualified leads within 80 miles.

18.   The Plaintiff requested the original signed contract on several occasions including in two emails. He was ignored by Manager Bill Kelly. The Plaintiff never received the signed contract until ordered by the Federal Court, received on November 13, 2015.

19.   The Plaintiff's commission schedule was dropped from 12 to 10 and from 7 to 5 lacking notice, with no explanation from Manager Bill Kelly. There were no complaints of any kind from anyone, including the Defendants, while the Plaintiff continued to do an outstanding job.

20.   Again, the Plaintiff requested the signed contract which was never forwarded. In that email and subsequent telephone calls the Plaintiff informed Bill Kelly that his actions and those of Premier seemed illegal and contrary to any agreement. Further, the Plaintiff gathered information from the New York State Department of Labor which was communicated to Bill Kelly on October 15th, 2014. On October 16, 2014 Bill Kelly sent an email saying the Plaintiff would be terminated. On October 17, 2014, the Plaintiff was terminated by Vice-President Gary Reda. The only initial notice was the inability to log on to his appointments. Plaintiffs earned funds were withheld totaling over $5,000 for more **than** 7 months.

21.   . The signed contract was finally sent to the Plaintiff on November 13, 2015, ordered by the Court in the Northern District of New York. That was over one year after termination. The Plaintiff had never seen the signed contract until then.

The original and first amended complaint filed with the Court on October 30, 2015, was devoid of important clauses and evidence contained therein due to lack of access to the contract. The Defendants chose to conceal the contract because it was and is incriminatory and they knew it. They intentionally committed active concealment, withholding evidence and thus preventing the Plaintiff access to documents.

22.     The Defendants wantonly, capriciously, fraudulently and egregiously violated and breached its own signed contract to the detriment of the Plaintiff as follows: Item number 10a. Termination. (sic) Either party may terminate this Agreement, without cause and for any reason whatsoever, by giving written notice of termination to · the other party at least thirty (30) days prior to the effective date of termination, which shall be specified in such written notice.  This clause was violated and breached

23.     Item number 15. Notices. Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and hand delivered or sent by certified mail, return receipt requested, to the Contractor's residence, or to the principal office of the Corporation, as the case may be. The date of delivery for purposes of this Agreement shall be the date of hand delivery or the date of mailing. Notices will be sent to the address provided by Contractor and are assumed to be received. Contractor shall notify Corporation of any change of address. This clause was violated and breached.

24.     Item number 2. Independent Contractor. The Contractor is an independent contractor and nothing in this Agreement is intended nor shall be construed to create an employer/employee relationship, a joint venture relationship, a partnership, or to allow the Corporation to exercise control or direction over the manner or method by which the Contractor performs the Services (as hereinafter defined). This clause was violated and

breached.

25.    Item number 2a. The Corporation will not withhold from compensation on behalf of the Contractor pursuant to this Agreement any sums for income tax, unemployment insurance, social security or any other withholding. This clause was violated and breached.

26.    Item number 3. Contractor's Duties and Responsibilities.  The Contractor agrees to provide to Corporation those services as set forth below (the Services"). The parties agree that the Corporation shall have no control over the manner of Contractor's performance of Services; provided however, that all Services provided here under shall at all times comply with any and all applicable laws, statutes, regulations codes and ordinances, whether federal, state or local.  This clause was violated and breached.

27.    The Defendants treated the Plaintiff as an employee in violation of their own contract then terminated the Plaintiff in an obvious attempt to avoid legal scrutiny for misclassification  violations on both the New York State and federal levels.

28.    The Active Concealment of the contract was conducted throughout the employment of Plaintiff and beyond. The signed contract was never sent ordered by the Court and received by the Plaintiff on November 13, 2015, over one year after termination.

29.    Intentional Misclassification was exercised in spite of the Defendant's written contract. They misused and misled the Plaintiff illegally converting him to an employee without compensation, benefits and all rights thereto. In its written opinion, the State of New York and Administrative Judge Steven Kittleman affirmed the ruling and also held the Defendants in default.

30.    Vice President Gary Reda sent the letter with no explanation other than the fact

that the Plaintiff was terminated immediately and he would send the monies owed the Plaintiff upon installation. The units were already installed. That never happened.

31. If the Plaintiff had not complained to various agencies, there is no question that he would have never gotten any of the money owed him. As it is there is still a balance of more than $2,000 that they are again choosing to ignore. The Plaintiff complained to the New York State Department of Labor, which investigated the Plaintiff's claim for unemployment insurance. That process took more than 5 months to complete. Premier did not cooperate with the Labor Department and chose to hold the Plaintiff's funds 7 months until June of 2015. Some were never paid and are still owing. Premier demonstrated acts of fraudulent behavior, arrogance and disregard for the law.

32. Premier contested the ruling twice and rebuked each time. In spite of the signed contract, the ruling is that the Plaintiff was a bona fide employee. Defendants' concurrent breach of contract and intentional misclassification were both abundantly clear.

33. Further, the Department of Labor concluded that Premier had not only broken New York State law but federal laws as well.

34. On May 22nd, 2015, Premier Bath defaulted on the hearing before Administrative Judge Steven Kittleman. Premier was provided an extra 45 days to lobby the Appeal Board. They never responded during that time frame. The time is now up. Defendants were obviously hiding behind the "terminate at will" and chose to ignore their own signed contract. The 'never received' contract was deemed null and void by NYSDL as the Plaintiff was clearly an employee and not an Independent Contractor. Premier chose the illegal activity to not pay unemployment fees, worker's compensation FICA fees, IRS taxes,

Social Security, Medicare and other costs for the Plaintiff. Upon termination, the Plaintiff was left with paying all the taxes and other costs as well. The Plaintiff was used by Premier Care in Bathing

35. Premier Bath didn't want to play by the rules and expected to take unfair advantage over other companies by misclassifying the Plaintiff and perhaps others.

36. Misclassification is a very serious crime on both the federal and state level, some company executives have gone to jail and paid fines. This case is no different other than the fact that it was intentional and malicious, harming the Plaintiff very profoundly in many ways. The Plaintiff lost many opportunities due to the illegal activities of Premier Care in Bathing. For example, shortly after termination the Plaintiff applied for but was rejected for a similar position with the bath company, Jacuzzi, and other companies.

37. Premier Care in Bathing knew they were breaching the contract as well as breaking the law. Moreover, the named Defendants violated both federal and New York State public policy. There was no fair dealing or demonstration of honesty by the Defendants. The Plaintiff's written request for a copy of the signed contract and explanation of the commission reduction, absent any notification and Plaintiff's subsequent appeal to the New York State Labor Board, was met with clear and immediate retaliation. The Defendants terminated the Plaintiff on October 17, 2014 within 12 hours for asking relevant questions in violation and certain breach of the contract.

38. In New York State, the initial determination of unemployment can have the same effect as an 'reverse audit,' once it is upheld by the administrative judge. This case was upheld by the Administrative Judge, Steven Kittleman on May 22, 2015 and again by default of Premier Care in Bathing on July 11th, 2015.

39.   The Plaintiff is informed and believes he was singled out, misused and abused as a lackey to carry out the work for Manager Bill Kelly in particular and Premier Bath in general to protect their marketing and advertising interests. Further, based upon so called jokes by Manager Bill Kelly the Plaintiff is informed and believes that he was singled out due to age and possibly ethnicity. Manager Bill Kelly is Caucasian and the Plaintiff is African American.

40.   The Plaintiff was gainfully employed and left his previous position to take the job and promises offered by Premier Bath, Inc. and Manager Bill Kelly. Further, Plaintiff informed Manager Bill Kelly, based upon his background, the job fits well and this could be his last career. Bill Kelly stated the walk-in bath sale is 'Just a simple conversation" with no traditional presentation or demonstration. He also stated the Plaintiff could work for Premier Care in Bathing for many years and was anxious to have him on board.

41.   The Plaintiff s reputation has been irreparably damaged and he could not find suitable employment. A termination, for any reason or none, stays with one lifelong. The damage is profound.

42.   Due to the difficult circumstances Premier Bath has put the Plaintiff into, the embarrassment, lack of available funds while bills came due, inability to secure suitable employment and a certain reduction in social stature has caused tremendous stress and Emotional Distress for the Plaintiff.

43.   Premier Bath has shown itself not only to be wantonly lawless but a capricious fraud, egregious, vile, corrupt and self-serving.

## CAUSES OF ACTION

**I.         Fair Labor Standards Act ("FLSA"): Failure to Pay Wages and Overtime Compensation Against All Defendants**

44.    The foregoing paragraphs are incorporated herein as if set forth in full herein.

45.    At all relevant times, Defendants have and continue to be "employers" within the meaning of the FLSA.

46.    At all times relevant herein, Defendants were responsible for paying wages to Plaintiff.

47.    At all times relevant herein, Plaintiff was employed with Defendants as an "employee" within the meaning of the FLSA.

48.    Defendant's violations of the FLSA include, but are not limited to, unlawfully failing to pay hourly wages due to Plaintiff and unlawfully failing to pay overtime wages due to Plaintiff.

49.    Defendants' conduct in failing to pay Plaintiff properly was willful and was not based upon any reasonable interpretation of the law.

50.    As a result of Defendants' unlawful conduct, Plaintiff has suffered damages as set forth herein.

**II.     Labor Standards Act ("FLSA") Wrongful Termination Against All Defendants**

51.    The foregoing paragraphs are incorporated herein as if set forth fully herein.

52.    Plaintiff relied upon the obligation of good faith and fair dealing in the contract and relied on the fact that his employment would not be terminated for an illegal purpose or

to avoid legal scrutiny.

53.    Plaintiff, at all times, fully complied with the terms and conditions of his employment.

54.    Defendants did not terminate Plaintiff's employment for performance reasons Defendants breached their own contract in violation of contract items 10 and 15 in particular and five others in general.

55.    Plaintiff was terminated on October 17, 2014 because of his inquiries and contacting the New York State Department of Labor.

56.    The Defendants breached their own contract while attempting to avoid the law.

57.    There is a causal connection between Plaintiff's inquiries regarding leads outside of his agreed upon territory and his termination by Defendants.

58.    The termination was based on retaliation for the inquiries by the Plaintiff.

59.    Due to the wrongful termination, Plaintiff suffered emotional distress, mental anguish, humiliation, harm to reputation, anxiety, depression, and stress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enters judgment against Defendants, and each of them, jointly and severally, for:

a)         Unpaid minimum wages, overtime wages, penalties and interest;

b)         Liquidated damages pursuant to the FLSA;

c)         General, compensatory, and special damages;

d)         Punitive damages;

e)         Reasonable fees and costs; and for such other and further relief as the Court deems just and proper.

Dated this 19th day of October, 2016.

/s/ Elizabeth J. Anderson
ELIZABETH J. ANDERSON, ESQUIRE
Florida Bar No.:  0626351
Anderson Hew PLLC
201 S. Orange Avenue, Suite 900
Orlando, Florida 32801
Telephone:  407-545-6429
Emails: eanderson@andersonhew.com
Counsel for Plaintiff