UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES CRABLE,

    Plaintiff,

v.                                            Case No:   6:16-cv-1825-Orl-37TBS

PREMIER BATHS, INC. and BILL KELLY,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion for Approval of Settlement Agreement (Doc 37). After due consideration, I respectfully recommend that the motion be denied.

### I. Background

Plaintiff Charles Crable alleges in Count I of his amended complaint that Defendants Premier Baths, Inc., and Bill Kelly failed to pay him hourly and overtime wages in violation of the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b), *et seq.* (the "FLSA") (Doc. 18, ¶¶ 1-72). Count II alleges that Defendants wrongfully terminated Crable in violation of the FLSA (Id., ¶¶ 1-61, 73-81). Crable never filed answers to the Court's interrogatories so the amount of his damage claim is unknown (Doc. 15 at 5). The Clerk entered default against Premier Baths, Inc. with respect to the initial complaint (Doc. 12). Kelly has answered Crable's complaint (Doc. 23). The dispute went to mediation, and the mediator reports that it has been completely settled (Doc. 36).

Now, Crable and Kelly seek review to determine whether their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food

Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under section 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 928 n.8, 90 L.Ed. 1114). The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Id.

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or

section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

## II. Discussion

Under the terms of their Settlement Agreement, Crable and Kelly are exchanging releases (Doc. 37 at 6-12). That is the sum and substance of the agreement; Crable is not receiving any money whatsoever (Id.). The only explanation provided for this unique settlement is:

> Since filing this action, the Parties identified in the Settlement Agreement have engaged in extensive settlement discussions, including the exchange of information relating to Plaintiff's claims in this action. After reconsidering the viability of his case against Defendant, Bill Kelly, Plaintiff has entered into the Settlement Agreement which the Parties are confident properly resolves all claims between Plaintiff, Charles Crable, and Defendant, Bill Kelly.

(Id., at 2-3). This explanation is not sufficient for the Court to perform its fairness analysis. If Crable is conceding that Kelly is not indebted to him under the FLSA that should be stated and the facts leading to that conclusion should be provided. In the alternative, if

Crable believes he has a valid FLSA claim against Kelly, then the parties need to explain why it is fair and reasonable for Crable to take nothing in this action.

In the Settlement Agreement, Crable agrees:

> By executing this Release, and except for the duties, obligations and covenants as specifically set forth herein, Charles Crable acknowledges, and does hereby fully and completely release and discharge Bill Kelly from any and all claims, actions, causes of action, demands, payments, attorneys' fees, litigation costs and expenses, benefits, rights, duties, obligations, covenants, damages, costs, loss of service, liens, expenses, compensation, and judgments whatsoever, whether known or unknown, or named or unnamed arising out of, relating to, or contained in the Settlement Agreement and including, but not limited to the claims made, or which could have been made from the beginning of time through the time that Charles Crable executes this Settlement Agreement.

(Id., at 7). This release is broader than the claims asserted in Crable's complaint. In Moreno v. Regions Bank, No. 8:09-cv-930-T-23TGW, 729 F.Supp.2d 1346 (M.D. Fla. Aug. 6, 2010), Chief Judge Steven D Merryday explained:

> An employee seeking to vindicate his FLSA rights often desperately needs his wages, and both the employee and the employer want promptly to resolve the matter. In a claim for unpaid wages, each party estimates the number of hours worked and the plaintiff's wage (i.e., establishes a range of recovery), and the court evaluates the relative strength of the parties' legal argument asserted in the particular case. However, in an FLSA action, neither party typically attempts to value the claims not asserted by the pleadings but within the scope of a pervasive release—that is, those "known and unknown," or "past, present, and future," or "statutory or common law," or other claims included among the boiler plate, but encompassing, terms unfailingly folded into the typical general release. Absent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate.

Id. at 1351-52. The second reason the Court cannot perform its fairness analysis is because it is impossible for the Court to value Crable's release of Kelly. I recommend that

- 4 -

in any revised settlement agreement, the parties restrict Crable's release to his claims made against Kelly in this case.

Two additional points merit discussion. Following entry of default against co-Defendant Premier on the complaint (Doc. 12), the Court dismissed the complaint (Doc. 16). Crable filed an amended complaint (Doc. 18) which requests entry of judgment against both Kelly and Premier "jointly and severally." No default has been entered against Premier with respect to the amended complaint. The Settlement Agreement recites that Crable and Kelly "desire to settle amicably *all claims relative to the Pending Action and otherwise,* subject to the terms and conditions set forth herein" (Doc. 37 at 6), and it has been previously represented to the Court that Crable has settled his claims against "all parties" (Docs. 34 and 35). But, Premier is not a party to the Settlement Agreement, and it is unclear what effect the Settlement Agreement is expected to have with respect to any claim Crable has against Premier, an alleged jointly liable Defendant.

Lastly, the Settlement Agreement states that in the event of any action arising under it, "the Parties ... agree that jurisdiction and venue for such action shall lie exclusively within the United States District Court for the Middle District of Florida, Orlando Division." (Provision 3.5). The parties cannot create jurisdiction in this Court by stipulation. Matters arising under settlement agreements that are not within the Court's diversity or federal question jurisdiction are usually for the state court to determine.

### III. Recommendation

For the foregoing reasons, I respectfully recommend the Court **DENY** the parties' joint motion, and give them 14 days to submit a new motion and settlement agreement for the Court's consideration.

## IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on October 6, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties